## 37935. ZUBER v. THE STATE.

MARSHALL, Justice.

The defendant appeals from his conviction of malice murder, for which he received a life sentence. We affirm.

1. Evidence to the following effect was adduced at the trial. The 68-year-old victim, Ruth Ivory, lived with her brother, Tom Howard, who was sickly and had an alcohol problem. The appellant rented from Howard a house next door for $40 a month. The appellant spent a great deal of time at the home of the victim and her brother, eating dinner there every day (paying what the victim considered an inadequate amount therefor), watching TV, bathing, borrowing Tom's automobile frequently, and collecting rent for Tom. Arguments and bad feelings developed between the appellant and the victim, who thought he was out to get her brother's money, house and car. When she would "get on his case," he would have to leave the house. There was testimony that the appellant had made two separate death threats against the victim within several weeks of the murder, and that she was so frightened of him that she spent the night at her sister's house whenever her brother was in the hospital.

On New Year's Eve of 1980, Howard came home drunk at 7:30 p.m., and slept until 9:30 the following morning. He awoke to find his sister lying on her bed, dead, with a pool of blood on the floor nearby. The cause of death (estimated to have occurred at 11:30 p.m., December 31, or as late as 6:30 a.m.) was a stab wound to the neck,

such as a pocketknife would make. There were five prick marks on her chest, and evidence that she had been kneeling and had been choked on the neck prior to the stabbing.

On New Year's Eve, the appellant got angry with the victim because she wouldn't let him use her brother's car, and he left and went to a neighbor's house. Later, Anthony Harper, the appellant, and then Curtis Carson each arrived at the victim's house separately over a period of an hour, and the three of them engaged in a card game for money with the victim. After Harper left at around 10:30 p.m., the appellant and his co-defendant, Carson, continued to play cards with the victim, who won almost all of the money.

Carson testified that the appellant told him during the victim's absence from the room that they were going to get their money back; that when she returned, Carson held her by the arms, thinking that the appellant was going to merely rob her; that the appellant then pulled a knife out of his coat pocket and struck her with it; that she ran into her bedroom and fell to her knees, and the appellant followed her and swung the knife again; that the victim again landed on her knees, bleeding and gurgling on her own blood; that the appellant then told Carson, "If you tell it, you'll get it too," and took $125 out of the victim's pockets, which he divided with Carson, who then left; and that the appellant was wiping blood from his hands and knife with the victim's scarf when he left. Fado Scott testified that he was at the victim's house when her body was discovered in a kneeling position, and that he had placed the body on the bed.

The appellant testified that he had left the victim's house at 10:20 p.m., with Carson and the victim still playing cards; that he had then gone home, turned on the radio, sat on the floor, drunk some beer until midnight, and noticed that the victim's living room light was still on. There was testimony that the appellant was smiling as the victim's body was placed in the ambulance, and at her funeral.

A review of the record in this case in the light most favorable to the prosecution shows that a rational fact finder could have found the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The appellant complains of the admission in evidence, over objection, of hearsay testimony by the victim's relatives as to their conversations with the deceased less than two months prior to the murder. This evidence of a previous difficulty between the defendant and the victim, which illustrates the state of feeling between them, was relevant to ascertain motive, and was admissible under Code Ann. § 38-302. E.g., *Jones v. State,* 246 Ga. 109 (6) (269 SE2d 6) (1980) and cits.

3. The appellant asserts as error the refusal to direct a verdict of

acquittal for him, contending that the testimony of his co-defendant, Carson, was not corroborated.

A motion for directed verdict should be granted only where there is no conflict in the evidence and it demands a verdict of acquittal as a matter of law. *Merino v. State,* 230 Ga. 604 (198 SE2d 311) (1973). " 'The conduct of a defendant before, during the time of, and after the commission of a crime, may be considered by the jury in establishing his intention and his participation, to determine whether or not such intention and conduct were sufficient corroboration of the testimony of an accomplice to sustain a conviction. This may be done by circumstantial as well as by direct evidence.' *Williams v. State,* 222 Ga. 208, 220 (149 SE2d 449) (1966)." *Smith v. State,* 238 Ga. 640, 642 (235 SE2d 17) (1977)."[T]he evidence corroborating the accomplice's testimony does not have to be sufficient in and of itself to support a verdict of guilty; circumstantial evidence tying the defendant to the crime and justifying an inference of guilt is satisfactory." *Gunter v. State,* 243 Ga. 651, 655 (256 SE2d 341) (1979).

Here, the co-defendant's testimony was corroborated by evidence of the ill feelings between the appellant and the victim, including death threats; the presence of the appellant at the scene of the crime at approximately the time of the crime, coupled with his denial to a witness that he had been there that evening; and his apparent pleasure from the death of the victim.

*Judgment affirmed. Jordan, C. J., Hill, P. J., Clarke, Smith and Gregory, JJ., concur.*

DECIDED OCTOBER 14, 1981.

*James Eugene Greene,* for appellant.
*Darrell E. Wilson, District Attorney, Michael J. Bowers, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General,* for appellee.