## 65421. WILBANKS v. THE STATE.

DEEN, Presiding Judge.

Among the several businesses owned by appellant Lenward Wilbanks, Jr., a 34-year-old Columbus entrepreneur, were three hair-styling salons operating under a "Command Performance" franchise. On May 4, 1981, Wilbanks was charged with arson in the first degree and, after a Muscogee County jury found him guilty, was sentenced to serve six years in prison followed by six years on probation. He appeals from this judgment on the general grounds and further enumerates a series of errors centering upon allegedly prejudicial jury instructions, the prosecuting attorney's questionable conduct at trial, and the court's exclusion of demonstrative evidence of the location and extent of the accused's burns. Also assigned as error is the court's denial of multiple motions for a directed verdict of acquittal and for mistrial based on the errors enumerated above.

The evidence shows that during a ten-day period immediately prior to the May 4 fire there occurred, according to Columbus police records, at least one, and perhaps two, unsuccessful attempts at arson of the same premises.[1] Appellant produced at trial voluminous documentation of a business trip to several distant cities during the period encompassing the date or dates of the abortive fire or fires. There was also evidence that five days prior to the first attempt Wilbanks was treated at a local hospital for facial burns and singed hair, which he allegedly had incurred while grilling a steak. Appellant

---

[1] On the Saturday night preceding the May 4 fire a report was made of persons pouring what appeared to be gasoline around the outside of the building and running away when they discovered they were observed. On the following Monday morning when an employee reported for work, she found the front door jammed in an unlocked position with a cloth stuffed between the lock and strike plate, and gasoline stains and fumes on the carpet just inside the front door. Officials were uncertain as to whether these constituted separate incidents or whether officers investigating the Saturday incident had failed to observe that the front door was not secured.

testified that his reason for being at the arson scene was that he had intended to "stake out" the salon by concealing himself so as to watch out for would-be arsonists; there was evidence that he had previously reported vandalism at one of his other businesses, a used car lot, and had similarly "staked out" that location.

Firefighters responding to the May 4 alarm testified that they had found appellant just inside the front door, wearing tattered remnants of clothing and crying out, "It blew up; they set me up!" They further testified to finding inside the salon "trailers" of gasoline on the carpet; two five-gallon cans containing small quantities of gasoline; two gasoline-tinged work gloves (later identified as appellant's) lying in separate locations; a cigarette lighter; some keys and $2.10 in change; and general indications (scorched carpet, buckled ceiling tiles) of an explosion and fire. No wallet was found either on the premises or on appellant's person.

Appellant testified that earlier in the evening he had spent some time in a cocktail lounge with a named friend who was not called to testify and had later caught a ride to the salon with an unnamed drinking acquaintance, not driving his own automobile because he did not wish would-be perpetrators to be "scared off" by the sight of his car parked in the vicinity. He testified that he had worn gloves so as not to smudge fingerprints; he offered no explanation of how he had paid for drinks at the lounge without a wallet, or as to how he had planned to retrieve his car or get home from the salon. He further testified that the explosion occurred just after he had entered the front door and relocked it, and that the fire had come under the front door following a "trailer" of gasoline allegedly sloshed on the sidewalk. Appellant contended that display at trial of the scars on his torso and legs would corroborate his claim that the fire had come from the direction of the front door rather than of the "trailers" and the gasoline cans. He asserted that he was in no financial difficulty and that to the contrary, the business had just "turned the corner." Evidence on this last point was ambiguous.

The state, on the other hand, contended that an accomplice, presumably the named friend who did not testify, had driven Wilbanks to the rear of the building; that they had carried the gasoline cans in through the back door; that Wilbanks had remained inside to "slosh" the gasoline around and otherwise ready the premises for the fire; and that a pilot light on a gas water heater had ignited the gasoline fumes prematurely, trapping Wilbanks inside the locked building. The motive, according to the state, was that appellant wished to divest himself of a losing business and to collect on his property and loss of business insurance policies, the dollar limits of which he had raised only a few weeks earlier. *Held:*

1. Appellant's enumeration of the general grounds (#6) is without merit. It is the function of the appellate court not to determine the weight of the evidence but to determine that there is sufficient evidence to enable a reasonable trier of fact to reach the verdict rendered. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980). In the instant case sufficient evidence was introduced at trial to authorize a reasonable jury to find the defendant guilty beyond a reasonable doubt of the offense charged.

2. As a corollary of the conclusion reached in the first division of this opinion, there was insufficient evidence to demand a directed verdict of acquittal. OCGA §§ 9-11-50, 17-9-1 (Code Ann. §§ 81A-150, 27-1802); *Barnes v. State,* 245 Ga. 609, 610 (266 SE2d 212) (1980); *Daniels v. State,* 158 Ga. App. 476, 477 (282 SE2d 118) (1981). Appellant's seventh enumeration is therefore without merit.

3. Appellant's fourth and fifth enumerations deal with allegedly prejudicial jury instructions. Appellant's assertion that the court should have given a supplemental instruction on the quantum of evidence required for conviction on circumstantial evidence in connection with the jury's request for clarification of the meaning of "reasonable doubt" has no merit in that the court has no duty *per se* to give a requested instruction in the words, or at the specific behest, of counsel when the same matter is fairly, accurately, and adequately covered elsewhere in the court's charge as a whole. *Hand v. Hand,* 244 Ga. 41 (257 SE2d 507) (1979); *Watkins v. Davis,* 152 Ga. App. 735 (263 SE2d 704) (1979). In the instant case the court had already fully instructed on this point. Moreover, the supplemental charge on reasonable doubt was extremely clear and comprehensive. As to the allegedly prejudicial "Allen charge," or "dynamite charge," the court below charged the jury in words that closely paraphrase the instruction approved in Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896). The Supreme Court of this state has repeatedly upheld the utilization of such a charge. *Anderson v. State,* 247 Ga. 397, 400 (276 SE2d 603) (1981). This enumeration, too, is without merit.

4. Appellant's enumeration as error of the court's exclusion of demonstrative evidence of the burn scars on his body (#1) and the related enumeration (#2) of the court's denial of appellant's motion for mistrial predicated on this exclusion are also without merit. The trial court has broad discretion as to admitting or excluding proffered evidence. *Baker v. State,* 246 Ga. 317 (271 SE2d 360) (1980). The Georgia rule favors admission of any relevant evidence, *Sprouse v. State,* 242 Ga. 831 (252 SE2d 173) (1977), and relevant evidence is defined as that which "renders the desired inference more probable

than it would be without the evidence." *Patterson v. State,* 233 Ga. 724, 725 (213 SE2d 612) (1975); *Baker v. State,* supra. See also Agnor's Georgia Evidence, § 10-2, p. 165. While in the instant case the scars would have been relevant to appellant's defense, the jury might equally well have drawn the desired inference from appellant's oral testimony; display of the burn scars would have been merely cumulative. Where the proffered evidence is cumulative of other evidence from which the jury might or might not draw a certain inference, to exclude that evidence is not error. *Jackson v. State,* 143 Ga. App. 734 (240 SE2d 180) (1977). Moreover, even if the exclusion were deemed error, we do not find it "highly probable," in light of the other evidence in the case, that such error would have contributed to appellant's conviction. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976). Neither this enumeration nor its corollary, appellant's initial motion for mistrial (#2), constitutes grounds for reversal of the judgment.

5. Appellant's remaining enumerations challenge the propriety of certain remarks of the prosecutor and the denial of appellant's motions for mistrial based on objections to these remarks. We find that certain ones of the remarks to which appellant objects do indeed press the limits of propriety, and some of them might arguably be said to exceed those bounds. In *Hoerner v. State,* 246 Ga. 374, 375 (271 SE2d 458) (1980), the Supreme Court of this state held: "While a district attorney may draw conclusions from facts proven, '(i)t is improper for the district attorney to urge his personal belief . . . as to the defendant's guilt . . .' [cit.]," as the prosecutor did in the instant case. Our courts have also held it improper for a prosecuting attorney to state his personal opinion regarding the veracity of witnesses, as was done in this case. See *Shirley v. State,* 245 Ga. 616 (266 SE2d 218) (1980), cert. denied 449 U. S. 879 (101 SC 227, 66 LE2d 102) (1980).

Such improprieties constitute reversible error, however, only if the court condones them and takes no action to prevent harm's ensuing from them. *Kelley v. State,* 248 Ga. 133 (281 SE2d 589) (1981); *Iler v. State,* 139 Ga. App. 743 (229 SE2d 543) (1976). In the instant case study of the record reveals that the court sustained appellant's objections to those prosecutorial remarks which in his sound discretion he deemed potentially prejudicial, and on several occasions rebuked the prosecutor in the presence of the jury. See OCGA §§ 9-10-185, 17-8-75 (Code Ann. § 81-1009); *Watkins v. State,* 160 Ga. App. 9 (285 SE2d 758) (1981). Moreover, we find no great probability that the improper remarks contributed to the verdict of guilty. *Johnson v. State,* supra. These enumerations are therefore also without merit.

Finding no reversible error, we affirm the judgment below.

*Judgment affirmed. Banke, J., concurs. Carley, J., concurs in Divisions 1, 2, 3 and 5 and in the judgment.*

DECIDED MARCH 10, 1983 —
REHEARING DENIED MARCH 23, 1983 —

*Frank K. Martin,* for appellant.

*William J. Smith, District Attorney, J. Gray Conger, Assistant District Attorney,* for appellee.