39603. CONGER v. THE STATE.

GREGORY, Justice.

Bud Daniel Conger was convicted of the offenses of murder, escape and motor vehicle theft. He was sentenced to life imprisonment for the murder.[1] The trial court also imposed

---

[1] The State sought the death penalty in this case. Following the sentencing phase of trial the jury recommended that the defendant be sentenced to life imprisonment.

consecutive sentences of five years imprisonment for the offense of escape and seven years imprisonment for motor vehicle theft.

At the time of the murder the defendant, who was known by the nickname "Country," was lawfully confined to the Mitchell County Correctional Institute where the victim, Hubert Lodge, was employed as a correctional officer. By agreement between the Warden and Deputy Warden, the defendant was given the authority to run the "inmate store" where inmates were permitted to purchase snacks and personal items. The defendant was not required to sleep in the dormitory with the other inmates but was allowed to sleep on a cot in the inmate store, and according to the trial testimony of the Deputy Warden, had the "general run" of the institution's grounds. The defendant's other responsibilities included maintaining the institution's two vehicles.

The victim typically reported for work at 4:30 p. m. supervising the inmates until he was relieved by another correctional officer at 4:30 a. m. the following day. On May 13, 1980 the Deputy Warden arrived at the institution at 4:00 a.m. to arrange the transfer of several inmates to another correctional institution. The Deputy Warden found the steel doors to the institution, normally secured at all times, wide open. Investigating further, he discovered that the defendant and one of the institution's vehicles were missing. He immediately notified the Warden and the Mitchell County Sheriff's Department. Hearing an inmate call out for the victim,[2] the Deputy Warden learned that the victim had not responded to the inmate's repeated calls during the last hour.

Finding the inmate store locked from the inside, the Warden and Deputy Warden forced the door open with a crowbar. According to the testimony of both men, blood covered the walls, floor and much of the merchandise in the store; broken bottles were strewn about the premises. The victim's body was discovered on the floor of the bathroom adjoining the inmate store. A blood-stained butcher knife was found outside the store. Shortly thereafter it was noted that three hundred dollars from the inmate store and the victim's gun were missing. The institution's policy required that the correctional officers punch a time clock every fifteen minutes while on duty. Records for the May 12-13, 1980 period indicated that the victim had last punched the clock at 12:15 a.m.

Bloody prison garb with the word "Country" stenciled on it was found later that day beside a highway in Mitchell County. The

---

[2] This inmate served as the institution's cook. The victim normally released him from the dormitory at 3:00 a.m. to enable him to begin breakfast preparations.

institution's car was later recovered in Albany, Georgia where it had been abandoned at a local motel. Several months later the defendant was arrested in Los Angeles, California on an unrelated offense. He waived extradition and returned to Mitchell County for trial of the offenses on appeal in this case.

While in the custody of the Los Angeles police the defendant admitted killing the victim, but insisted that he had done so in self-defense. Upon his return to Georgia he gave statements relating to the victim's death on two separate occasions to a GBI agent. In his first statement the defendant maintained he had killed the victim in self-defense. The defendant explained that during the evening of May 12 another inmate had referred to the victim as "Hubert," a practice which the victim considered to be disrespectful, preferring to be called "Boss Lodge" by the inmates. The defendant stated that the victim mistakenly believed the defendant had called him "Hubert" and followed the defendant to the inmate store. The defendant alleged that when the victim raised a bottle to strike the defendant, the defendant drew a knife he had hidden in the store and stabbed the victim. The defendant then removed the victim's keys and escaped in the institution's car. Shortly thereafter he stopped and changed into some "free world" clothes he had hidden in the store, discarded his prison attire, and drove to Albany. He then took a bus to Atlanta where he changed to a bus to Houston, Texas. From there he hitchhiked to California.

In his second statement the defendant maintained that prior to the killing he had been under "great pressure" from other inmates who had accused him of shortchanging them in his operation of the inmate store; that as a result of this pressure he began thinking about escaping; that on the night of the victim's death he drew his knife and demanded that the victim lie down but that the victim resisted and a struggle ensued during which the victim was stabbed. The remainder of the defendant's statement tracks the first statement given to the GBI agent.

All three statements were admitted in evidence at trial.

During trial a fellow inmate testified that shortly before the murder the defendant related to the witness his intention to escape in the institution's car. The defendant also inquired of this witness the best method to hit a person to "knock him out."

The State's medical expert testified that the victim had been stabbed seven times in his chest and abdomen and that he had also observed a number of "defensive wounds" on the victim's hands. The medical examiner testified that four of the stab wounds were in the victim's heart, any one of which could have resulted in his death.

Each of the defendant's enumerations of error relates to the

sufficiency of the evidence to support the verdict. The defendant first argues that the evidence does not meet the test set out in Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We do not agree. Viewing the record in this case in the light most favorable to the prosecution, we conclude a rational trier of fact could have found the defendant guilty of the offenses with which he was charged.

Nor can we agree with the defendant that the trial court erred in failing to direct a verdict of acquittal. We cannot say that there was "no conflict in the evidence and the evidence . . . demand[ed] a verdict of acquittal." OCGA § 17-9-1 (formerly Code Ann. § 27-1802).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 25, 1983.

*L. Earl Jones,* for appellant.

*Alfred J. Powell, Jr., Jack G. Slover, Jr., Michael J. Bowers, Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.