68275. CHRISTMAS v. THE STATE.

DEEN, Presiding Judge.
Appellant Otis Christmas was tried on a charge of trafficking in marijuana, found guilty, and sentenced to five years' incarceration in the State prison and a $25,000 fine plus court costs. The conviction was based upon evidence showing that Christmas, who was temporarily residing with his brother in Randolph County, suggested to his alleged co-conspirators in the marijuana smuggling enterprise that the nearby Cuthbert-Randolph County Airport would be a suitable place for the surreptitious unloading of the contraband cargo; that he offered the conspirators the use of his brother's garage and barn for storing the marijuana and related equipment; that he arranged for the conspirators to park their vehicles on property belonging to his relatives and friends; and that, shortly before the plane carrying the marijuana was scheduled to land, he performed surveillance of the landing strip area from a radio-equipped van, for the purpose of determining whether law enforcement officials were in the area.

The evidence adduced at trial indicated that the other men who were arrested for participation in the smuggling operation (with the exception of the plane's mechanic) had been planning such an under-

taking for more than a year before it actually came to fruition. The original plan had been to "kick" (i.e., drop) a quantity of marijuana from a small plane belonging to the pilot, Stephen Johnson, in a field near Perry, Georgia. The State adduced no evidence that appellant was actively involved in the early stages of the plan. There was evidence, however, that he had known several of the other participants for some time; that he had traveled in Florida (where several of the others lived) and also in Puerto Rico, Jamaica, and Colombia (notorious marijuana sources) during the year preceding the incident underlying this appeal; and that he had previously been convicted for possession of a small amount of marijuana.

The State further showed that when the small plane was destroyed by a tornado, Johnson was asked by others in the group whether he would be interested in smuggling a larger quantity in a larger plane for a larger price, and that he answered in the affirmative. It was at this point that appellant's services were enlisted to assist in arranging for the landing at a suitable airstrip and for the storage of equipment and cargo. The actual operation was delayed several times, primarily because of unfavorable weather. The landing was ultimately scheduled for the night of January 11, 1983, and appellant, together with other participants, left his brother's house with the explanation that they were going on an overnight hunting trip to Alabama. Actually they were planning to spend the night in an Albany, Georgia, motel so as to be convenient to the places where they would need to be for their surveillance and offloading tasks. When it became necessary to postpone the operation until the night of January 12, Christmas removed his base to his brother's house because the latter was going to visit out-of-town relatives and would thus presumably be unaware of the activities of appellant and the others, who had stored their gear (actually, marijuana-related equipment) on the premises.

Law enforcement officers, acting on information from personnel in other states, surrounded the Cuthbert landing strip and apprehended several of the perpetrators in the act of unloading the bales of marijuana into their vehicles; others escaped but were apprehended shortly thereafter. The officers then went to the Christmas residence, where they had observed suspicious vehicles, and questioned appellant Christmas and his brother, who had returned from his family visit. With the permission of both Otis Christmas and his brother, the house and outbuildings were searched, and weighing scales and plastic bags of the sort often used for breaking down marijuana into salable quantities were found in suitcases identified as belonging to the other participants, together with bags containing marijuana residue. Appellant's shaving kit, containing his current passport, issued in 1981 and bearing the stamps of the customs services of three Latin American countries, was found in one of the vehicles used by participants in the

crime. In the wallet belonging to the pilot, Johnson, was found a slip of paper bearing the telephone number of the Christmas residence and the name "Whitey," by which nickname there was evidence that appellant (a prematurely white-haired, 50-year-old man) was known to his friends.

Several of those apprehended entered guilty pleas, and Michael Lawrence, one of those arrested, gave a statement regarding the overall plan and the roles played by various alleged participants, including appellant Christmas. Lawrence took the stand at trial for direct and cross-examination and elaborated upon his prior statement. The State also presented testimony by law enforcement officers and others connected with the crime. The defense presented witnesses (appellant's relatives and a close friend) who attempted to provide an alibi and other defenses; this testimony was not consistent either within itself or with other evidence, however.

At the close of the State's evidence appellant unsuccessfully moved for a directed verdict of acquittal, and the jury subsequently rendered a verdict of guilty. On appeal Christmas enumerates as error the admission of Lawrence's inculpatory testimony and the denial of appellant's motion for a directed verdict of acquittal. *Held*:

1. Appellant assigns as error the trial court's admission of the testimony of Lawrence, an alleged co-conspirator. He contends that such testimony was improper because under OCGA §§ 24-3-5 and 24-3-52, once the fact of the conspiracy has been established, the declaration or confession of a co-conspirator is admissible against persons other than the declarant only during the pendency of the conspiracy. *Gunter v. State*, 243 Ga. 651 (256 SE2d 341) (1979); *Hill v. State*, 232 Ga. 800 (209 SE2d 153) (1974); *Wall v. State*, 153 Ga. 309 (112 SE 142) (1922). See also OCGA § 24-4-8. Appellant not only questions the fact of the conspiracy, asserting that the only proven conspiracy pertained to a separate, aborted enterprise (the Perry plan) in which appellant was not involved; he also contends that, assuming there was ever a conspiracy involving the appellant, it was no longer pending at the time Lawrence made his inculpatory statements.

Beyond noting that the State adduced evidence which would demonstrate the existence of an ongoing conspiracy, we need not address the issue of conspiracy *vel non*, or of the exact point of its termination. The Code sections and related case law on which appellant relies are inapplicable to a situation like that in the instant case, in which the co-conspirator takes the stand at trial and gives direct testimony regarding matters relevant to the charges against the defendant. *Hill v. State*, 239 Ga. 278 (236 SE2d 626) (1977); *Sutton v. State*, 237 Ga. 423, 424 (228 SE2d 820) (1976); *Oliver v. State*, 159 Ga. App. 154 (282 SE2d 767) (1981); *Boggus v. State*, 136 Ga. App. 917 (222 SE2d 686) (1975); *Brown v. State*, 132 Ga. App. 200 (207

SE2d 682) (1974). In such an evidentiary posture the co-conspirator or accomplice has exactly the same status as any other competent witness, in that the defendant can confront him in open court and his testimony is subject to cross-examination. *Hill v. State*, supra at 180; *Pippin v. State*, 205 Ga. 316 (53 SE2d 482) (1949); *Daniels v. State*, 136 Ga. App. 854 (222 SE2d 673) (1975). The trial court therefore did not err in admitting Lawrence's testimony, and this enumeration is without merit.

2. Also without merit is appellant's assertion that the trial court erred in denying the motion for a directed verdict of acquittal because the evidence was insufficient to sustain a conviction. Even aside from the challenged testimony of Lawrence, which in Division 1, supra, we have held admissible, considerably more than a modicum of evidence was adduced that would tend to establish appellant's knowing participation in the plan or conspiracy to import marijuana: more than one of the vehicles proven to have been involved in the enterprise was shown to be connected in one way or another with appellant Christmas, in such manner or at such time and place as to point to his involvement in the undertaking; there was contradictory testimony as to exactly when appellant purportedly arrived at his brother's house after an alleged visit to relatives on the night of the crime, and as to the time at which he had subsequently left the house, if at all; weighing scales and plastic bags of the type frequently used for packaging marijuana were found in suitcases stored in the Christmas garage; in the wallet belonging to the plane's pilot there was found a slip of paper bearing appellant's nickname and local telephone number.

A further significant evidentiary detail which was touched upon several times at trial, but without elaboration, was the fact that on the night on which the contraband had originally been scheduled to land at the Cuthbert airport, appellant, ostensibly going on an overnight hunting trip to Alabama, had taken with him his current passport. It seems unlikely that rational jurors would find it reasonable to conclude that a passport was a necessary or even appropriate accoutrement of a trip to a contiguous state; but the same rational trier of fact might readily conclude that a person engaged in smuggling contraband from a source country would deem it wise to take along his passport on the chance that flight to a convenient foreign territory might become a prudent action. See *Coney v. State*, 101 Ga. 582 (28 SE 918) (1897).

Such evidence is, of course, largely circumstantial. Circumstantial evidence is no less probative than direct evidence, however, if it meets the statutory criterion: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6; *Pattillo v.*

*State*, 250 Ga. 510 (299 SE2d 710) (1983); *Jones v. State*, 165 Ga. App. 260 (299 SE2d 920) (1983). Circumstantial evidence need not remove every possibility of the defendant's innocence. *Barfield v. State*, 160 Ga. App. 228 (286 SE2d 516) (1981). Whether the circumstances in a given case are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for jury determination. *Anglin v. State*, 244 Ga. 1 (257 SE2d 513) (1979); *Barfield v. State*, supra; *Walker v. State*, 157 Ga. App. 728 (278 SE2d 487) (1981). The credibility of witnesses offering direct testimony is likewise a jury question. *Young v. State*, 232 Ga. 176 (205 SE2d 307) (1974); *Redd v. State*, 154 Ga. App. 373 (268 SE2d 423) (1980). When, as in the instant case, there is both direct and circumstantial evidence pointing to the same conclusion, this court will not disturb the jury's verdict. *Brewer v. State*, 156 Ga. App. 468 (274 SE2d 817) (1980).

"Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' . . ., the court may direct the verdict of acquittal to which the defendant is entitled under the evidence . . ." OCGA § 17-9-1 (a). *Zuber v. State*, 248 Ga. 314 (282 SE2d 900) (1981); *Paxton v. State*, 160 Ga. App. 19 (285 SE2d 741) (1981). See also *Sutton v. State*, supra. "While a conviction based entirely upon the testimony of an alleged accomplice, uncorroborated by other competent evidence, will not be allowed to stand, . . . sufficient corroboration may consist of either direct or circumstantial evidence which . . . would justify an inference of the guilt of the accused independently of the testimony of the accomplice." *Gunter v. State*, supra at 655, citing *Haire v. State*, 89 Ga. App. 629 (80 SE2d 497) (1954).

The evidence in the instant case did not meet the statutory criteria for the award of a directed verdict of acquittal, and the court therefore did not err in denying appellant's motion. *Conger v. State*, 250 Ga. 867 (301 SE2d 878) (1983). Moreover, our scrutiny of the record and the voluminous trial transcript persuades us that there was sufficient competent evidence to authorize a rational trier of fact to find appellant guilty of the offense charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hampton v. State*, 250 Ga. 805 (301 SE2d 274) (1983); *Conger v. State*, supra.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED APRIL 27, 1984 —
REHEARING DENIED MAY 15, 1984 — 

*James E. Friese, Robert E. Baynard*, for appellant.

*Charles M. Ferguson, District Attorney*, for appellee.