77025. MARTIN v. THE STATE.
77026. MERKA v. THE STATE.
77027. ALLEN v. THE STATE.
(376 SE2d 888)

DEEN, Presiding Judge.

Some time near the beginning of 1983 there developed in DeKalb County an undertaking whereby, for a fee, persons cited for various traffic offenses (and, in particular, those cited for driving under the influence of alcohol) were enabled, either directly or through an intermediary, to contact certain attorneys who, likewise either directly or through an intermediary, would arrange for the client's file to be surreptitiously removed from the Solicitor's Office, so that the driver's

license would be immediately returned to the client and his case would never appear on the docket. When facts concerning this activity began to come to light and the "fixed" cases to be reconstructed, it became evident that there was a sizable group associated in the enterprise in one role or another, and that it was engaged in a wide-ranging pattern of what can only be labeled "racketeering activity" relative to "ticket-fixing."

After an eight-month police investigation and a four-month Special Grand Jury investigation, Dale T. Martin, Steve A. Merka, and Charles Marion Allen, appellants in these three companion cases, were indicted for violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act (two counts each) and stealing public records (75 counts altogether). Additionally, Martin and Merka were indicted for first-degree forgery (one count each) and criminal attempt to steal public records (one count each). Also indicted were four others, one of whom pled guilty and three of whom were tried separately. The three appellants here were tried jointly by a DeKalb County jury, which found Martin guilty on all counts with which he was charged except one count of stealing public records; Merka was found guilty on all counts with which he was charged except two counts of stealing public records; and Allen was found guilty on all counts with which he was charged, except four counts which were dropped when a witness refused to testify. Martin and Merka received twenty-year sentences; Allen received ten years; all were held jointly liable for restitution in the amount of $137,092.34. Additionally, Martin and Merka were disbarred from the practice of law. After denial of their motions for new trial, the three filed appeals with this court. *Held*:

1. Before detailed consideration is given to each of appellants' enumerations of error, a few words may be in order regarding the factors common to the individual incidents presented in evidence at trial. The common factors were (1) each offender had contacted either Martin, Merka, or Allen to handle his or her DUI or traffic offense, and (2) the case file of each offender who testified at trial had been removed from the Solicitor's Office. Additionally, each offender had paid a sizable fee for this service, and several testified that their attorneys had alluded to the fact that the fee would be "split" with someone other than the person (or attorney) whom the offender had actually paid.

It is also important to note that Merka was a former employee of the Solicitor's Office and had retained such cordial relations with his former colleagues that he had literally "the run of the place." Moreover, it was through this former association that Merka was in a position to know not only how to remove court records physically filed in the Solicitor's Office (whether with his own hands or by the presuma-

bly well-greased palms of others), but also how to obtain those records originally filed in a satellite tribunal, through the expedient of having the case "bound over" and physically transferred to the Solicitor's Office, thereby creating numerous opportunities for a deft hand to extract the desired files from the group.

2. Appellants were convicted of two substantive violations of the Georgia RICO Act, OCGA § 16-14-4 (a) (b). OCGA § 16-14-4 (b) proscribes the conducting or participating, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity. OCGA § 16-14-4 (a) proscribes the acquiring or maintaining, directly or indirectly, of any interest in or control of any enterprise, real property, or personal property of any nature, including money, through a pattern of racketeering activity.

The Georgia RICO Act, OCGA § 16-14-1 et seq., is modeled upon and closely analogous to the Federal RICO statute. *Chancey v. State*, 256 Ga. 415 (349 SE2d 717) (1986). Because the statute is fairly recent, there are few decisions from Georgia courts interpreting it. Therefore, we must look primarily to the federal decisions for guidance on our interpretation of the Georgia RICO statute.

The State's indictment named seven defendants who composed the group of individuals who were associated in fact, although they did not constitute a legal entity. Appellants argue the evidence was insufficient at trial to establish a group of individuals associated in fact — an enterprise, as defined by the RICO Act — in whose affairs they could have participated directly or indirectly. We disagree.

All appellants argue that the evidence was insufficient at trial to establish the existence of an enterprise so as to authorize conviction under the Georgia RICO statute. We find, however, that the evidence adduced at trial sufficiently established the existence of an enterprise to authorize conviction under RICO. In *United States v. Elliott*, 571 F2d 880 (5th Cir. 1978), the court held at 898: "A jury is entitled to infer the existence of an enterprise on the basis of largely or wholly circumstantial evidence . . . [A] RICO enterprise cannot be expected to maintain a high profile in the community. Its affairs are likely to be conducted in secrecy and to involve a minimal amount of necessary contact between participants. Thus, direct evidence of association may be difficult to obtain."

In order to prove a violation of the Georgia RICO Act, the State must initially prove the existence of an enterprise. *United States v. Turkette*, 452 U. S. 576, 583 (101 SC 2524, 69 LE2d 246) (1981); *Chancey v. State*, supra at 417. OCGA § 16-14-3 (1) defines "enterprise" as follows: "any person, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this State, or other legal entity; or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it in-

cludes illicit as well as licit enterprises and governmental as well as other entities." *United States v. Elliott*, supra at 897, defines "enterprise" as follows: "[W]e are persuaded that 'enterprise' includes an informal, de facto association . . . In defining 'enterprise,' Congress made clear that the Statute extended beyond conventional business organizations to reach '*any* . . . group of individuals' whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes . . . There is no distinction, for 'enterprise' purposes, between a duly formed corporation . . . and an amoeba-like infra-structure that controls a secret criminal network." Under *Turkette*, supra at 583, an enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

In a subsequent case, *United States v. Cagnina*, 697 F2d 915, 920 (1983), the Eleventh Circuit (successor to the Fifth Circuit) adopted the rationale of *Turkette* and *Elliott*: "This circuit has interpreted 'enterprise' to include an informal criminal network engaged in racketeering activity, . . . In *United States v. Elliott* . . . the court held that a group of persons who had committed a variety of unrelated offenses with no agreement as to any particular crime could be convicted of a RICO offense, because they were associated for the purpose of making money from repeated criminal activity." *Turkette* and related cases require the State to prove both the separate elements of an enterprise and a pattern of racketeering. Cf. OCGA § 16-14-4 (a), (b). Appellant Martin alleges that the State used the same evidence to establish both those elements, a practice which he claims is barred under *Turkette*. What the court actually held in *Turkette*, however, was that while proof of one of the elements does not necessarily establish the other, "the proof used to establish these separate elements may in particular cases coalesce." Id. at 2529.

Martin argues that the State proved only that he knew appellant Merka but failed to prove that he knew of the existence of any of his other five co-defendants. He also claims that the State failed to prove that appellants' association had an "ascertainable structure," as required by *United States v. Anderson*, 626 F2d 1358 (8th Cir. 1980).

We agree with the analysis set forth by the 11th Circuit in such cases as *Turkette* and *Elliott*, supra, and find appellants' arguments to the contrary without merit. First, contrary to appellants' allegations, the State was *not* required to prove that all of the members of the enterprise knew of the others' existence. Neither did the State have to prove an "ascertainable structure," as Martin suggests. See our quotation from *Elliott*, supra at 897. We note that such cases as *United States v. Sutton*, 605 F2d 260 (6th Cir. 1979), are so distinct from the instant case on their facts as to be largely inapplicable to the case *sub judice*.

While the testimony of more than seventy witnesses in the cases at bar helped to establish a pattern of racketeering activity in that the appellants were responsible for certain files that were missing from the DeKalb County Solicitor's Office, this testimony also helped to establish the existence of an enterprise, since every witness whose file was missing had hired Merka, Martin, or Allen to "handle" his case. Yet this was not the only evidence the State presented in proof of the existence of an enterprise. Also presented were the computer-generated telephone lists showing phone calls made between the parties at significant times, the testimony of Merka's secretaries, and the numerous remarks made by Allen and Martin to their clients indicating that someone else was involved in the handling of the DUI cases.

Like Martin, Merka also relies on the 8th Circuit's analysis, as in *United States v. Anderson*, supra, claiming that the State failed to prove the existence of an enterprise. He claims that the three requirements for constituting an enterprise as set forth in *United States v. Bledsoe*, 674 F2d 647 (8th Cir. 1982), are missing from the State's case. These include a common purpose, continuity of structure, and an ascertainable structure distinct from that of the pattern of racketeering activity. Under the facts of this case, we find this to be a distinction without a difference. The same analysis applies to appellant Allen's assertions. We find no merit in appellants' enumerations regarding any failure to find sufficient evidence of RICO violations by all three defendants.

3. Appellants Martin, Merka, and Allen contend the trial court erred in denying their motions for severance. Martin argues the joinder was impermissible because the offenses with which Martin and the other two co-defendants were charged did not arise out of the same transaction or series of transactions. Merka alleges that the only basis upon which the trial court could have allowed joinder was the State's RICO theory of prosecution, and, because he claims the RICO charges against him were not proven, his joinder was improper. Appellant Allen contends that his role was "passive" and that, as a result of the trial court's refusal to sever his trial from that of his co-defendants, a "spillover" effect of the evidence against his co-defendants led to his convictions.

The denial of severance is within the discretion of the trial court and will not be reversed unless it can be shown the joint trial constituted a denial of due process. *Carroll v. State*, 147 Ga. App. 332 (248 SE2d 702) (1978). In determining the severance issue, the trial court must consider the following: (1) Whether the joint trial will create confusion of the evidence and law applicable to each individual defendant; (2) Whether there is danger that evidence admitted against one defendant will be considered against another despite cautionary instructions by the court; (3) Whether the co-defendants will claim

antagonistic defenses. *Jones v. State*, 243 Ga. 584, 586 (255 SE2d 702) (1979). See also *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975).

(a) "[T]wo or more defendants charged with different offenses may be tried jointly where the offenses were part of a common scheme or plan." *Padgett v. State*, 239 Ga. 556, 559 (238 SE2d 92) (1977). Our review of the facts of the instant case indicates that appellants were indicted for their participation in an ongoing criminal enterprise which had a common purpose — in the interest of pecuniary reward to prevent the prosecution of criminal cases pending in the Solicitor's Office of DeKalb County. Therefore, appellant Martin's claim that joinder was not permissible because the offenses did not arise out of the same transaction or series of transactions is without merit.

(b) Because this court has held, supra, that Merka was properly charged, tried, and convicted of violating the Georgia RICO Act, his sixth enumeration of error concerning the misjoinder of the parties is without merit.

(c) Applying the test set forth in *Jones v. State* to the instant case, we find that the trial court did not abuse its discretion in refusing to sever Allen's trial. The verdict form as returned by the jury serves as a clear indication that the jury understood the indictment and the evidence as it related to each appellant. Although Allen argues that this is not true because the jury did not acquit him on any counts, the record reveals that all of the counts with which Allen was charged were based on clear evidence that he was involved, either directly or indirectly, with the removal of files from the DeKalb County Solicitor's Office. Also, the mere fact that fewer counts were proven against Allen than against the other appellants by no means establishes that appellant Allen's conviction was based on "spillover." Moreover, the trial court's instruction to the jury to consider the evidence against each defendant individually, along with the verdict which was rendered, establishes that Allen was convicted because the jury was convinced of his guilt beyond a reasonable doubt. Furthermore, Merka was the only appellant to testify on his own behalf, and he did not predicate his defense upon the guilt of appellant Allen. Cf. *United States v. Hewes*, 729 F2d 1302 (11th Cir. 1984).

4. Appellants Martin and Allen allege that the trial court erred in failing to give the specific jury charges they had requested. Martin, in his fifth and sixth enumerations, argues that the trial court improperly refused to charge the jury regarding the law of conspiracy and multiple conspiracies. Allen contends in his tenth enumeration that the trial court erred in failing, in its charge to the jury, to define the specific intent element of the crime of stealing public documents.

(a) The language of Counts 1 and 2 of the indictment make it

clear that appellants were charged with two substantive violations of the Georgia RICO Act (OCGA § 16-14-4) and not conspiracy to violate RICO. Count 1 of the indictment closely tracks OCGA § 16-14-4 (b) and contains all of the essential averments of this statute. Likewise, Count 2 of the indictment also alleges a substantive RICO violation under OCGA § 16-14-4 (a) and also contains all of the essential averments of this statutory provision. Therefore, we find that the indictment in the instant case did not allege "a single conspiracy," as Martin argues. Accordingly, Martin's requests for jury charges regarding conspiracy and multiple conspiracies were properly denied by the trial court.

(b) Appellant Allen enumerates as error the failure of the trial court to issue a jury charge on the specific intent element of the crime of stealing public documents. This court cannot find in the record where Allen submitted a written request to charge on specific intent, as required by OCGA § 5-5-24. Furthermore, the trial court gave the jury charge for the intent required for stealing public records, which clearly informed the jury that appellants were required to "wilfully" remove or cause the removal of the documents "with the intention of converting to his own or another's use." The trial court also gave the standard charge on criminal intent. In these circumstances, the failure to charge on specific intent did not create reversible error. See, e.g., *Hand v. Hand*, 244 Ga. 41 (257 SE2d 507) (1979); *Wilbanks v. State*, 165 Ga. App. 876 (303 SE2d 144) (1983). Accordingly, Allen's tenth enumeration of error is without merit.

5. OCGA § 17-9-1 (a) prescribes: "Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' . . . , the court *may* direct the verdict of acquittal to which the defendant is entitled." (Emphasis supplied.) Subsection (b) of this statute permits the defendant "to move for a directed verdict at the close of the evidence offered by the prosecuting attorney or at the close of the case. . . ." A motion for directed verdict should be granted only where there is no conflict in the evidence, and the evidence demands acquittal as a matter of law. *Zuber v. State*, 248 Ga. 314 (282 SE2d 900) (1981). The Supreme Court will hold that the trial court did not err in failing to direct a verdict of acquittal where, as here, it cannot be said that there was no conflict in the evidence and the evidence demanded a verdict of acquittal. *Conger v. State*, 250 Ga. 867 (301 SE2d 878) (1983).

Despite appellant Martin's allegations regarding evidentiary insufficiency, we have held previously, supra, that the charges against each of the defendants in the cases *sub judice* conform to the requirements of OCGA § 16-14-4 (a) and (b), under which the defendants were charged and tried. See *Chancey v. State*, supra. To quote from a

case relied upon by Martin himself, "To secure a conviction under RICO, the Government must prove both the existence of an 'enterprise,' . . . and the connected pattern of racketeering activity." *United States v. Turkette,* supra at 583.

This is exactly what the State has proven with respect to each of the appellants here. The evidence cited in Martin's appellate brief approaches, at the very most, allegations that the incidents involving his clients were but examples of the operation of the "long arm of coincidence." Of course, they fall far short of fulfilling the statutory requirements cited supra, or the imperative of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Martin's allegation that none of the parties in the ticket-fixing enterprise knew each other is blatantly untrue, as demonstrated not only by the "clients' " testimony, but also by the telephone logs and by Merka's secretary's testimony. See Division 2, supra.

Likewise, the evidence adduced by appellant Merka in support of his analogous enumeration of error leans heavily on that same long arm named above, by positing a remarkable series of coincidental occurrences — so remarkable, in fact, as to raise the expectation that appellants will attempt to propound alternative "reasonable hypotheses of guilt." No such alternative hypothesis is expounded or even enunciated in Merka's brief, so that such argument, tenuous as it may be *ab initio,* is abandoned in the very moment of its proposal.

As for Allen, he asserts that his motion for directed verdict of acquittal should have been granted because the only actions of his that might conceivably be characterized as "participation" in any aspect of the RICO enterprise were isolated instances of such innocuous activities as "referring cases to a lawyer." Allen alleges that such activities do not meet the test set forth in *United States v. Bright,* 630 F2d 804 (5th Cir. 1980), which requires at 822 that a defendant "objectively manifest an intent to participate in the criminal enterprise." Allen argues that "mere association with nefarious characters is not a ground to convict." Id. at 822. It is a truism of law that intent is a question of fact and may be found by the trier of fact from, *inter alia,* consideration of prior or subsequent conduct. OCGA § 16-2-6; *Worth v. State,* 179 Ga. App. 207 (346 SE2d 82) (1986); *Mallette v. State,* 119 Ga. App. 24 (165 SE2d 870) (1969). The enumerations of all three appellants regarding the trial court's denial of directed verdicts of acquittal are plainly without merit.

6. Allen alleges in his third enumeration of error that the trial court erred in denying his motion for continuance based on supplemental witness lists filed by the State. Allen claims he was not properly prepared to defend his case because the supplemental lists were delivered in an untimely fashion under OCGA § 17-7-110.

On April 24, 1987, appellant made a written demand for a list of the State's witnesses. In compliance, on July 27, 1987, the State filed a list of witnesses, comprising approximately 128 names, but supplemented this initial list on August 21, 1987, with 60 additional names and again on August 26, 1987, with 74 additional names. The trial of the case began on September 8, 1987.

Under *Ellis v. State*, 248 Ga. 414, 416 (283 SE2d 870) (1981), the State must provide a complete witness list "within a reasonable time before trial so that the defendant may be adequately prepared. What constitutes a reasonable time before trial must depend upon the nature of the case, the number of the State's witnesses, the nature of their testimony, and any other factor which may logically bear upon the question."

The rational trier of fact would find that Allen's defense would not have been hindered by the absence of the supplemental witness lists. The record reveals that only six of the 262 witnesses whose names the State supplied testified against appellant Allen at trial, and these six witnesses appeared on the original list which was filed on July 27, 1987, six weeks before trial was scheduled to begin. Six weeks is clearly a reasonable time under *Ellis*, supra, particularly when the witnesses were so few and the issues so simple. Therefore, we find that the trial court did not abuse its discretion in denying appellant Allen's motion for continuance. Accordingly, Allen's third enumeration of error is without merit.

7. Generally, the grant or denial of a motion for mistrial is within the sound discretion of the trial judge, *Johnson v. State*, 142 Ga. App. 526 (236 SE2d 493) (1977), and that discretion will not be disturbed by the appellate court absent abuse. In the instant case, although the motions that are the subject of Merka's third and Allen's fourth enumerations of error were made at different times during the trial and were based on different grounds, we find no abuse of discretion in the trial court's denial of either.

Merka's motion for mistrial was based on an incident in which an attorney representing Martin made a statement in the hearing of the jury to the effect that he had previously represented a witness who testified against the defendants at a Grand Jury hearing. According to the record, Merka did not move for mistrial right at that point, but waited not only until after the conclusion of the cross-examination during which the objectionable remark had been elicited, but until there had followed redirect examination, further direct examination, and further cross-examination. Ordinarily, a motion for mistrial must be made promptly after the improper question or answer, *Veasley v. State*, 142 Ga. App. 863 (237 SE2d 464) (1977); and failure to move for a mistrial at the appropriate time is tantamount to waiver. *Dye v. State*, 177 Ga. App. 824 (341 SE2d 314) (1986). Moreover, in the in-

stant case the trial court immediately gave a very clear and fair instruction to the jury that should have dispelled any misapprehension that the testimony might have created. In such circumstances, the overruling of the motion for mistrial was not even error. *Chandler v. State*, 143 Ga. App. 608 (239 SE2d 158) (1977). Furthermore, the attorney who made the challenged remark actually had no connection whatsoever with other allegations or charges against Merka; the only concern of the attorney himself was that he not be implicated in any of the offenses with which Merka was being charged.

Allen's motion for mistrial was based on remarks of a female witness about learning of the "ticket-fixing" while on a trip to Florida with her boyfriend, a severed co-defendant. Allen moved for mistrial on the ground that these remarks constituted inadmissible hearsay testimony. In the first instance the trial court immediately gave a sufficient curative instruction, and Allen's counsel did not renew the objection to the testimony. In the second instance the witness said that she could not remember for sure whether Allen had also actually gone along on the trip to Florida during which she had allegedly first learned from her boyfriend of the "ticket-fixing." When Allen's counsel objected to this as hearsay, the trial court, recognizing that the testimony was not hearsay, simply admonished the witness not to speculate but merely to say whether she had or had not seen appellant Allen in Florida. Again the objection was not renewed. We find these enumerations without merit.

8. Allen appeals the trial court's denial of his motion to suppress certain evidence obtained as a result of two separate search warrants; namely, a spiral-bound notebook which contained the notation, "Larry Freeman, DUI $2500, 409 N. McDonough Street, Satisfactory."

On August 6, 1986, a detective went to appellant Allen's residence to speak with him about an ongoing investigation of missing DUI files. He was invited into the premises by Allen and, while waiting for Allen to finish a telephone call, he observed several marijuana plants growing in pots on Allen's back patio. Allen was then taken to be interviewed about the missing DUI files. At that time a second detective obtained the first search warrant, based upon the first detective's observation of marijuana plants. Pursuant to the search warrant, police officers conducted a search of appellant Allen's apartment which revealed the notebook belonging to Allen. In the course of the search a narcotics officer discovered the notation in question, which he believed was related to the ongoing DUI investigation. Upon this finding, a second search warrant was then obtained for the documents in Allen's home which constituted evidence of the DUI cases currently under investigation. Most of the items seized were listed on the inventory of both warrants.

Allen argues that the scope of the search exceeded that which was necessary for seizing the marijuana which had been observed on his premises. He maintains that personal papers are an exception to an officer's authority to seize those items for which he has probable cause. Testimony of the narcotics officer, however, indicated that in normal compliance with a drug warrant, officers routinely conduct a thorough search in which they look for drugs, lists of customers, and any other information tending to establish a drug connection. The facts show that during the course of the initial search for drug-related items, the narcotics officer recognized evidence related to another crime. Evidence of another crime, discovered while searching pursuant to a valid search warrant, may be lawfully seized. *DePalma v. State*, 228 Ga. 272 (4b) (185 SE2d 53) (1971). Moreover, seizure of private papers not included in the warrant is not precluded when the items seized are instrumentalities of a crime and the search is valid. *Ledesma v. State*, 251 Ga. 885, 890 (311 SE2d 427) (1984).

Allen also questions whether the search warrants were executed in good faith. After a review of the facts and the routine procedures used by the officers in drug searches, we find appellant's argument untenable. Therefore, the trial court properly denied appellant Allen's motion to suppress, and Allen's first enumeration is without merit.

9. "Restitution" is defined in OCGA § 17-14-2 (7) as "any property, lump-sum or periodic payment ordered to be made by any offender to any victim by any ordering authority." Subsection (9) of the statute defines "victim" as "any natural person or his personal representative or any firm, partnership, association, public or private corporation, or governmental entity suffering damages caused by an offender's unlawful act."

The appropriate measure of damages for restitution is that measure of damages which would be proper in whatever civil action the victim could have maintained against the perpetrator or perpetrators for the same, or equivalent, acts as those which constituted the offense of which the offender has been convicted and sentenced (with the exception of punitive damages and damages for pain and suffering, mental anguish, or loss of consortium). OCGA § 17-14-2 (2); *Garrett v. State*, 175 Ga. App. 400 (333 SE2d 432) (1985). The Supreme Court recently held in *Walden v. State*, 258 Ga. 503, 504 (371 SE2d 852) (1988), that the fees for jurors and bailiffs may not be taxed against criminal defendants. See OCGA § 17-11-1; *Peters v. State*, 9 Ga. 109 (1850). That portion of the sum ordered to be paid as restitution which represents fees paid for special grand jurors, traverse jurors, and bailiffs must therefore be calculated and deducted from the previously awarded total of $137,092.34.

However, there were in the instant case expenses incurred in the Solicitor's Office during the investigation and prosecution of the

cases, and other fairly readily determinable costs, as well — not to mention the unknown amount of lost revenues that might have been received for convictions on the "fixed" offenses. The State adequately sets out the basis of its claim for restitution of known expenses, and (other than the erroneously awarded sums representing the costs of jurors and bailiffs noted, supra) we find nothing erroneous or unreasonable therein.

As to the argument that imposition of costs will have a chilling effect on the exercise of the accused's right to a jury trial, we can only observe that laws allowing assessment of costs against convicted criminals have been on the books since 1863. OCGA § 17-11-1. As for appellant Merka's contention that holding the appellants jointly and severally liable for the entire restitutionary amount is unjust, we need only point to the time-honored analogy in tort law, to which, under statutory and case law, the courts must look when determining what restitution is due. See OCGA § 51-12-31. See also OCGA § 17-14-3; *Morrison v. State*, 181 Ga. App. 440 (352 SE2d 622) (1987).

10. All three appellants attack the indictment as duplicitous and multiplicitous. They allege not only that Count 1 and Count 2 (RICO violations) are duplicitous but that, because the crimes charged in Counts 3-77 (or, as regards various defendants, as many as are applicable to them respectively) are precisely the same as those recited in Count 1 as the "at least two incidents of racketeering activity" required to establish a RICO violation, as defined in OCGA § 16-14-3, then the counts (3-77) in which the predicate offenses are recited are all duplicitous, and the convictions thereon should be reversed. In *Chancey v. State*, supra at 416, the court defined "multiplicity" as "the charging of the same crime in several counts of a charging document . . . Count 1 of the indictment charged appellants with violating RICO, Counts 2 through 5 charged appellant . . . with murder and arson, and these latter counts were based on different facts from those supporting the RICO counts. We find that the indictment was not multiplicitous." In *Chancey* the facts needed to prove Counts 2 - 5 were entirely different from those used to prove Count 1.

In the case at bar, however, all the facts recited as the basis for Counts 3 through 77 are also recited verbatim as the predicate for Count 1 (violation of OCGA § 16-14-4 (b)). In Count 1 these facts are evidence of appellants' association with an "enterprise" and participation, directly or indirectly, in the enterprise by engaging in a pattern of racketeering activity. The facts needed to prove Counts 3 through 77 are that appellants, through a variety of methods and acts, stole the records and documents belonging to the DeKalb Solicitor's Office, and these facts are exactly the same as those in Count 1. Only in Counts 2 (violation of OCGA § 16-14-4 (a)), 78 (first-degree forgery), and 79 (criminal attempt to steal public records) are different

facts recited.

OCGA § 16-1-7 provides, in pertinent part, that "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." A crime is included in another when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." OCGA § 16-1-6 (1). *Haynes v. State*, 249 Ga. 119 (288 SE2d 185) (1982); *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974).

A conviction under RICO is a two-step process: (1) proving that appellant has committed two or more offenses of the sorts included in the RICO statutes, and (2) proving that the two or more offenses have been committed as a part of an enterprise engaging in a pattern of racketeering activity, as defined in the RICO Act.

In *United States v. Phillips*, 664 F2d 971 (5th Cir. 1981), appellants were charged with conspiracy to violate RICO as well as substantive RICO violations, and with violation of the continuing criminal (narcotics) enterprise statute, 21 USCA § 848. They argued that in narcotics conspiracy cases a RICO conspiracy charge is a lesser included offense of a § 848 continuing criminal enterprise claim. The federal test for determining whether two offenses are the same for purposes of double jeopardy is " 'whether each provision requires proof of an additional fact which the other does not.' [Cits.]" *United States v. Phillips*, supra at 1005. This test is derived from *Blockburger v. U. S.*, 284 U. S. 299 (52 SC 180, 76 LE 306) (1932). The *Blockburger* test focuses not on the evidence adduced at trial but on the elements of the offenses; i.e., to invoke the bar of double jeopardy, the offenses charged must be the same as a matter of fact *and* as a matter of law. " 'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' [Cit.]" *Phillips*, supra at 1006. Under federal law, then, the fact that the RICO counts include the additional element of showing association with an "enterprise" serves to dispel any allegation of merger.

Under Georgia law, as distinguished from federal law, the rule is stated in the disjunctive, and looks to the evidence introduced at trial. An accused may not be subjected to multiple punishments if the crimes charged are the same as a matter of fact *or* as a matter of law. *State v. Estevez*, supra. "[I]f the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under

[OCGA § 16-1-6 (1)]. [Cit.]" *Haynes v. State*, supra at 120. " 'A felony may merge into another felony which requires an additional element or a more culpable mental state or a more serious injury or risk of injury to the same person, property, or public interest.' [Cit.]" Id. The entry of separate convictions in the instant case for the offenses used as the predicate offenses in Count 1 is thus barred by OCGA § 16-1-7 (a), which prohibits multiple convictions for the same conduct.

According to the record, the indictment (Count 1) charges all the defendants with unlawfully conducting or participating (directly or indirectly) in an enterprise "through a pattern of racketeering activity consisting of theft by taking and tampering with evidence," as manifested in some seventy-five separate instances of the charged offenses ((1) theft by taking and (2) tampering with evidence). See OCGA §§ 16-14-3 (2), 16-14-4 (b). Count 2 incorporates the allegations of Count 1 and charges, in addition, the violation of OCGA § 16-14-4 (a): "to acquire or nurture . . . [through a pattern of racketeering activity or proceeds derived therefrom] any interest in or control of any enterprise, real property, or personal property . . . including money." This violation is alleged to consist of acquiring two automobiles, an acre of land, and more than $100,000 in United States currency. It is clear that the offenses enumerated in Count 2 were not based upon, and did not "use up," the same evidence as that which afforded the basis for Count 1. Therefore, Counts 1 and 2 are not duplicitous of one another, and each conviction can stand. Likewise, Count 78 alleges first-degree forgery against Martin & Merka, and Count 79 alleges against the same two defendants criminal attempts to steal public records. Neither of these two counts is duplicitous of the other or of Counts 1 or 3-77; and, therefore, the convictions on both can stand.

The challenged convictions in Counts 3-77, however, present a different situation. As previously noted, supra, the record shows that in each of the seventy-five counts immediately following Count 2, the State realleged seriatim and verbatim each of the separate instances recited in Count 1. Any two of these counts (3-77) would have sufficed to make up the essential elements required by OCGA § 16-14-3 and 16-14-4. Because the State chose gratuitously to include as predicates for a RICO violation all of the instances of the prohibited acts recited in Counts 3-77, it has "used up" the evidence, so that there is none left to form the basis for the separate offenses enumerated in these latter counts, and none of these convictions can stand.

It is true, of course, that appellants enumerate in this regard only the overruling of their motions to quash the indictments as multiplicitous and to require the prosecutor to elect upon which counts he would proceed. This enumeration of error challenges the multiple *prosecutions*, and consequently does not actually reach the error because, as previously noted, the rules barring multiple *prosecutions* are

different from those barring multiple punishments. The rules against multiple prosecutions are procedural, and merely protect an accused from being unduly harassed by or threatened by successive criminal prosecutions. The operative error here is in the *conviction* and *sentencing* of appellants for the same conduct twice.

Despite that, this court should take note of and correct this error, if possible. " ' "In exceptional circumstances, *especially in criminal cases*, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." [Cit.]' [Cits.]" *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986). (Emphasis supplied.) "[We] find this to be one of those cases in which the rule quoted above was intended to be applicable. It would seriously affect the fairness and integrity of the judicial system to allow an illegal and unauthorized sentence to stand . . ." *Taylor v. State*, 186 Ga. App. 113, 115 (366 SE2d 422) (1988).

We conclude, therefore, that the trial court erred in sustaining separate convictions and imposing separate sentences. Nor is the error necessarily harmless, despite the fact that the sentences are to be served concurrently. Our Supreme Court has expressed no opinion as to whether the imposition of concurrent sentences bars review of double jeopardy proscriptions. See *State v. Estevez*, supra at 320. In *Estevez*, however, the Supreme Court acknowledged that the sentences were to run concurrently, and nevertheless affirmed this court's opinion, reversing and remanding with direction that another jury be empaneled for the purpose of determining sentence. There is no jurisdictional bar to such consideration (see *Benton v. Maryland*, 395 U. S. 784, 789-790 (89 SC 2056, 23 LE2d 707) (1969)), and sentences for additional crimes, even if served concurrently, may affect such matters as parole and pardon.

The three captioned cases must therefore be remanded to the Superior Court for resentencing. Counts 1, 2, 78, and 79 must be affirmed with respect to Martin and Merka, as we find no error below with regard to those counts. Likewise (although appellant Allen does not support his corresponding enumeration in his brief and is therefore deemed under Court of Appeals Rule 15 (b) to have abandoned it), those counts which are duplicitous of the offenses cited as predicate crimes must be reversed, leaving standing only Allen's convictions of the RICO counts (Counts 1 and 2), which we affirm.

*Judgments in all three cases affirmed in part and reversed in part. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED NOVEMBER 15, 1988 —
REHEARINGS DENIED DECEMBER 5, 1988 —

*Steven T. Maples, Gregory N. Crawford,* for appellant (case no. 77025).

*Calvin A. Leipold, Jr.,* for appellant (case no. 77026).

*Mary S. Donovan,* for appellant (case no. 77027).

*Robert E. Wilson,* District Attorney, *Patricia G. Higginbotham, Eleni A. Pryles,* Assistant District Attorneys, for appellee.