### A98A2290. SCROGGINS v. THE STATE.
(514 SE2d 252)

SMITH, Judge.

Bennie Rufus Scroggins was indicted on one count of aggravated child molestation, three counts of child molestation, and one count of attempted child molestation. He was tried before a jury, which found him guilty on all counts. His motion for new trial, as amended, was denied, and he brings this appeal, raising six enumerations of error. We find that the evidence presented at trial was sufficient to authorize the jury to find Scroggins guilty of the offenses charged, but we also find that errors at trial mandate retrial. We therefore reverse the judgment below and remand this case to the trial court.

1. Construed to support the verdict, the evidence presented at trial showed that two unrelated young girls, H. W. and S. W., accused Scroggins of molesting them on more than one occasion. The State presented the testimony of a police officer who interviewed both victims and taped the interviews; both tapes were played for the jury. Two doctors testified that they examined one of the victims. A pediatrician testified she examined H. W. in July 1996. Her physical findings showed an enlarged vaginal opening consistent with either digital or penile penetration, and H. W. told her that Scroggins had molested her "last Christmas." A family practice physician testified that H. W. was referred to him by the county health department in October 1996 because she was complaining of a vaginal discharge associated with itching and burning and because she had told a psychologist treating her that she had been abused sexually approximately a year previously. The doctor's physical examination revealed "a small healed lesion . . . consistent with previous penetration." H. W. told him that Scroggins had abused her. The psychologist testified that H. W. was suicidal, her grades had plummeted, and she was

having nightmares and wetting her bed. According to this witness, these symptoms were consistent with a sexually abused child. H. W. told her that Scroggins had molested her.

Both victims testified at trial that Scroggins molested them more than once, and their testimony alone was sufficient to support Scroggins's conviction on all charges. The evidence was sufficient to authorize the jury to find Scroggins guilty of the charged crimes under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. We find no merit in Scroggins's contention that the trial court erred in admitting the taped statements of the victims. We reject Scroggins's argument that because such tapes are "inconsistent" with the statutory exception to the hearsay rule that permits their introduction, we should overrule established case law allowing them into evidence. OCGA § 24-3-16 authorizes the admission of out-of-court statements made by children concerning sexual abuse if the children are "available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." Audiotapes, as well as videotapes, have been held admissible under this statute. See, e.g., *Havron v. State*, 234 Ga. App. 413-414 (1) (506 SE2d 421) (1998) (video and audio tapes admitted); *Heard v. State*, 221 Ga. App. 166, 167-168 (2) (471 SE2d 22) (1996) (videotape admitted).

The victims in this case were available to testify, and they did so. Scroggins argues that the tape of H. W.'s interview did not provide sufficient indicia of reliability because it was made after interviewing the mother in the child's presence. The State concedes, and we agree, that this is not the best practice. It creates potential problems by providing an opportunity for a parent to make comments that are inadmissible and must later be redacted if the tape is to be used at trial. Nevertheless, the interviewing officer testified that the victim was not coached and spoke voluntarily, and no evidence was presented showing that this tape was unreliable or inadmissible.

3. Scroggins alleges error in the denial of his motion to sever for separate trial the offenses involving S. W.

> Offenses may be joined for trial when they are based on the same or similar "conduct" so as to evince a common scheme, plan, or modus operandi. [Cits.] Severance is mandatory, upon defense request, if offenses are joined improperly, i.e., *solely* because they are of the same or similar "character." [Cits.] If a trial court determines that joinder was proper, severance is not mandatory, but discretionary. [Cit.]

(Emphasis in original.) *Smith v. State*, 225 Ga. App. 553 (1) (484

SE2d 515) (1997).

In this case, similar "conduct" was involved even though the identical pattern of molestation was not used with both victims. Both victims were approximately the same age, both were molested while alone in a darkened room, and in both cases the victims alleged that Scroggins touched them with his penis.

Moreover, because of the liberal extension of the rule allowing similar transaction evidence in sexual offense cases, the molestation of each victim would have been admissible as a similar transaction at the trial of the other even had the offenses been severed. *Redding v. State*, 219 Ga. App. 182, 184 (3) (464 SE2d 824) (1995). Under these circumstances, we find no abuse of discretion in the trial court's denial of Scroggins's motion to sever.

4. Although Scroggins maintains the trial court erred in denying his motion for a pretrial examination of the State's psychiatric experts, the record does not show that the trial court refused to allow such an examination.

A hearing was held on several pretrial motions, including this one. The transcript shows that at the hearing, defense counsel informed the court that he had approached the experts, psychiatrists or psychologists who examined or treated the victims, seeking to interview them before trial. The experts indicated they were "willing to talk" to defense counsel if they could be certain such conversations would not be in violation of the psychiatrist/patient or psychologist/patient privilege set forth in OCGA § 24-9-21 (5) and (6).

The privilege is absolute, and unless it is waived, the information sought is not discoverable. *Freeman v. State*, 196 Ga. App. 343 (1) (396 SE2d 69) (1990). But at the motions hearing, the issue of waiver was not resolved. Certain of the victims' medical records had been requested by defense counsel, and resolution of the question of whether the victims had waived their privilege hinged upon whether and to what extent these records could be disclosed to the defense. The trial court made no ruling at the hearing, but informed counsel that it would look at the records and make a determination of what the defense could see.

Scroggins never further pressed his motion, but it is apparent that the psychiatric experts' reluctance to speak to the defense before trial did not impact adversely on Scroggins's defense. Only one such expert testified, and this expert was subjected to a thorough and sifting cross-examination by Scroggins. Although the parties do not reveal which records or documents were eventually discovered, it is clear from the trial transcript that the psychologist who testified summarized her clinical notes and turned them over to the court and that the defense, in turn, received certain documents. We find no

error. See *Kelly v. State*, 197 Ga. App. 811, 813 (1) (399 SE2d 568) (1990).

5. Scroggins contends the trial court erred by refusing to allow the jury to rehear the testimony of the two doctors who testified at trial. We find merit in this contention.

Closing arguments were not recorded, but the parties agree that a dispute arose during closing argument for the defense, when Scroggins's attorney recalled the testimony of Dr. Alan Woodrow Jones, the family practitioner who testified for the State. The State objected to the argument, asserting that defense counsel was misstating the evidence. The trial court interjected a comment, but the prosecutor withdrew his objection and Scroggins's closing argument proceeded.

Later, during jury deliberations, the court informed counsel that the jury had requested a "transcript" of the testimony of the two medical doctors who testified. In the ensuing colloquy, the court indicated it could not comply with the request because no transcript existed. Defense counsel suggested it would be possible to play the doctors' testimony back for the jury, but the prosecution objected on the ground that this would unduly emphasize the testimony of those two witnesses. The court denied the request for playback and instructed the members of the jury that they must recall the testimony of the doctors from their own individual memories.

Ordinarily, "[w]hether the trial court will require the court reporter to read former testimony is a matter resting in its sound discretion. [Cit.]" *Davis v. State*, 266 Ga. 801, 802-803 (4) (471 SE2d 191) (1996). But even such discretion has bounds. And in this case, a question had been raised in the presence of the jury about the substance of that very testimony. A serious disagreement existed regarding whether defense counsel misstated the evidence. And allowing the jury to rehear the disputed testimony would have settled that dispute unequivocally, while causing little, if any, harm.

The record shows that H. W. accused Scroggins of molesting her in December 1995, but she saw Dr. Jones for a urinary tract infection some ten months later, in October 1996. The transcript shows that Dr. Jones testified there were three times in her life when a woman is prone to urinary tract infections: in the first two years of life; when she becomes sexually active; and after menopause.[1] Using Dr. Jones's testimony regarding the occurrence of urinary infections, defense counsel argued to the jury that it was unlikely that Scroggins molested the victim. Given defense counsel's purpose in referring to the doctor's testimony and its importance to the defense, together

---

[1] This testimony appears to have been stated accurately during closing argument by defense counsel.

with the specific request made by the jury to clarify the doctors' testimony, we conclude that the trial court abused its discretion in refusing to allow the jury to hear it. Scroggins must be granted a new trial.

6. Because Scroggins's conviction is reversed and he will be retried, we need not address in full his contention that the trial court erred in commenting on the evidence. We will presume that any error will not recur at retrial. We are also mindful that closing argument was not recorded (notwithstanding trial defense counsel's testimony at the post-trial hearing that he had requested "a full transcript") and that we must presume that the trial court's conduct of the trial was proper. *Adams v. State*, 234 Ga. App. 696, 697 (2) (507 SE2d 538) (1998). But we also note that after the jury returned its verdict in this case, the trial court allowed defense counsel to state for the record his recollection of the events during his closing argument; this attorney also testified at the post-trial hearing, providing evidence as to what transpired during the unrecorded closing arguments. Because Scroggins will be retried, we are constrained to take this opportunity to state our view of the circumstances that combined in this case to prejudice him so that those circumstances do not recur and to caution the bench and bar regarding similar circumstances.

The trial transcript shows that when given the opportunity to state his recollection of events for the record, defense counsel stated that during his closing argument the prosecutor objected on the ground that he was misstating Dr. Jones's testimony. He recalled that the trial court also commented that its recollection of Dr. Jones's testimony agreed with that of the prosecutor and that defense counsel was not representing that testimony correctly to the jury. The court and both attorneys agreed for the prosecutor to withdraw his objection, and the court commented (but did not so instruct the jury) that it would let the jury decide from its own recollection what the doctor's testimony had been. The testimony at the post-trial hearing was to the same effect.

After trial, defense counsel filed a post-trial "Suggestion of Incomplete Record," attempting to produce a transcript of the omitted portions of the record as permitted under OCGA § 5-6-41 (f). At the hearing on this motion, defense counsel suggested that an order was needed to perfect the record, under OCGA § 5-6-41 (f). Although the trial court apparently neglected to do this, defense counsel followed the procedure set out in our Code to perfect the record for appeal when a transcript is unavailable. Compare *Stubbs v. State*, 220 Ga. App. 106, 109-110 (5) (469 SE2d 229) (1996).

Further, affidavits from the clerk of court and a juror support defense counsel's recollection that the trial court agreed (erroneously) with the prosecutor, in the presence of the jury, that defense

counsel was misstating the evidence and that the court's recollection agreed with that of the prosecutor. Counteraffidavits filed by the State in an apparent effort to repair the damage fail to rebut the material portions of these affidavits. The prosecutor does not dispute in material part, and various disinterested parties agree, that events indeed transpired as the defense alleges. If these allegations are in fact correct, then no question exists that the trial court violated the prohibition against commenting on the evidence found in OCGA § 17-8-57. That Code section provides that it is error for any judge during the progress of any criminal case, not only to express an opinion as to the guilt or innocence of the accused, but also "to express or intimate his opinion as to what has or has not been proved." The proper procedure would have been to excuse the jury during the discussion and then to *instruct* the jurors that any dispute regarding what had been proved was for them to resolve.

*Judgment reversed. Johnson, C. J., and Barnes, J., concur.*

DECIDED MARCH 18, 1999.

*Ellis C. Smith, James C. Thornton,* for appellant.
*Peter J. Skandalakis, District Attorney, Brett E. Pinion, Assistant District Attorney,* for appellee.