### A01A0668. HAYES v. THE STATE.
### A01A0669. KILLEN v. THE STATE.
### A01A0670. TOWNS v. THE STATE.
(549 SE2d 813)

BARNES, Judge.

As these appeals follow a joint trial, we have consolidated them for disposition. Darrell Lamar Hayes, Kelvin Lorenzo Killen, and Jatavius Lamar Towns appeal their convictions of three counts of

---

[1] OCGA § 9-11-15 (b).
[2] *Burger King Corp. v. Garrick*, 149 Ga. App. 186, 188 (253 SE2d 852) (1979).
[3] Id.

burglary, two counts of criminal attempt to commit burglary, four counts of armed robbery, six counts of aggravated assault, six counts of possession of a firearm during the commission of a felony, one count of terroristic threats and acts, and one count of hijacking a motor vehicle.

Hayes contends the trial court erred by denying his motion to suppress evidence seized after what he contends was an illegal stop and search of his vehicle; by allowing the State to rebut his alibi defense without providing the notice required under OCGA § 17-16-5 (b); by denying his motion to sever offenses; by denying his motion to sever his trial from the other appellants' trials; by denying his motion for a mistrial after the State referred to gang activity in its opening statement; by denying his motion for the court to take judicial notice of perjured testimony, denying his motion to strike the perjured testimony, and denying his motion for a mistrial because of the unreliable and perjured testimony; and by denying his motion for a directed verdict of acquittal on all counts. Hayes also contends the evidence is insufficient to sustain his conviction on all charges.

Killen and Towns allege the trial court erred by allowing the State to rebut their alibi defense without providing the notice required under OCGA § 17-16-5 (b), by denying their motion for a mistrial after the State referred to gang activity, and by denying their motion for a severance of the offenses. They also contend the trial court erred by denying their motion for a new trial because the evidence was not sufficient to authorize their conviction on all counts.

Viewed in the light most favorable to the verdict, the evidence shows that on September 7, 1997, someone burglarized a home and outbuildings, taking among other items a double-barrel .20 gauge shotgun and a .22 caliber pistol. About a week later on September 15, 1997, another home was burglarized. Three gold coins were among the items taken. As these burglaries were discovered after the crimes were committed, no description of the perpetrators was available. In both burglaries, the perpetrators committed what appeared to be unnecessary vandalism.

On September 26, 1997, two men with guns wearing ski masks and gloves entered the home of two victims who were present at the time, robbed them, and took their automobile. One of the men was armed with a double-barrel shotgun. An accomplice drove a car that followed the robbers in the victims' car. A victim described one man as black and about six feet tall and the other man as slightly shorter and more slender.

Later, three men with weapons robbed a gas station. One of the men had a small pistol, one a shotgun, and the other an "Uzi-type" gun. The robbers put the money they took in a blue plastic bag they

had brought with them. While the victims could not identify the robbers, one victim described them as three black men wearing "sock-type" hats and bandannas across their faces.

Then, late in the evening of October 10, 1997, a man sitting in his home was wounded by shots fired through the window by unknown attackers. The county sheriff and a deputy responded to the incident and stopped an automobile driving in this area. Hayes was driving the car which was owned by Killen, who was in the backseat; Towns was also a passenger in the car. The authorities found the sawed-off double-barrel shotgun and the .22 caliber pistol taken in the first burglary, the gold coins taken in the second, and a Tech-9 automatic pistol similar to a weapon used in the service station robbery. A victim of the home invasion robbery identified the sawed-off shotgun as that used in the robbery of her home, and the gloves, found in the trunk of the car, as similar to those used by the robbers. The Tech-9 found under the rear seat was the weapon used to shoot into the house that night. The authorities also found three hoods or masks, bandannas, and the blue plastic bag from the gas station robbery.

Subsequently, Killen was interviewed by a Georgia Bureau of Investigation agent, and, after being warned of his rights, he admitted he went to the last victim's home and shot into his house. Killen, however, denied participating in the other crimes. He stated that he bought the guns found in his car from a white man in another city.

1. Hayes, Killen, and Towns all challenge the sufficiency of the evidence. Hayes contends the trial court erred by denying his motion for a directed verdict and further contends the evidence is not sufficient to sustain his conviction. Killen and Towns contend the trial court erred by denying their motion for a new trial because the evidence was not sufficient to sustain their convictions. Nevertheless, the test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), is the appropriate one to use when the sufficiency of the evidence is challenged, whether the challenge is from the denial of a directed verdict or the denial of a motion for new trial based upon alleged insufficiency of the evidence. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

Thus, we must measure all the appellants' evidentiary challenges against the *Jackson v. Virginia* standard. In doing so, we view the evidence in the light most favorable to the verdict, the appellants no longer enjoy the presumption of innocence, and we will determine the sufficiency of the evidence, but not its weight. Also, we do not judge the credibility of the witnesses. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

Additionally, motions for directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evi-

dence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311) (1984). On appeal, a reviewing court may consider all the evidence in the case (*Bethay v. State*, 235 Ga. 371, 375 (1) (219 SE2d 743) (1975)), and as in the case of all challenges to the sufficiency of the evidence, it must view the evidence in the light most favorable to the verdict. *Humphrey v. State*, supra, 252 Ga. at 527.

The appellants' challenges rely upon their alibi defense, their assertions that no one could identify them as the perpetrators of any of the crimes, and the absence of physical evidence connecting them to the crimes. Proof by direct evidence, however, is not required. A conviction may be based upon circumstantial evidence if the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused. OCGA § 24-4-6. When the evidence meets this test, circumstantial evidence is as probative as direct evidence (*Christmas v. State*, 171 Ga. App. 4, 7 (2) (318 SE2d 682) (1984)), and "[w]hether this burden has been met is a question for the jury." *Doe v. State*, 189 Ga. App. 793, 795 (377 SE2d 546) (1989). When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law. *Pattillo v. State*, 250 Ga. 510, 512 (1) (299 SE2d 710) (1983); *Jones v. State*, 165 Ga. App. 36, 38 (1) (299 SE2d 576) (1983). Further, while circumstantial evidence must exclude every other *reasonable* hypothesis but the defendant's guilt, the evidence need not exclude every inference or hypothesis. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662) (1987).

After reviewing the evidence in the light most favorable to the jury's determination, we conclude that the jury rationally could have found from the circumstantial evidence that every reasonable hypothesis was excluded except that the appellants were guilty of the crimes, and the transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that they were guilty of the offenses of which they were convicted. *Jackson v. Virginia*, supra. The appellants were apprehended in a car containing the masks, clothing, and bandannas used in the earlier crimes, the stolen weapons used in the crimes, and gold coins taken in an earlier crime. Further, the witnesses to two of the crimes testified that three men were involved. And, finally, Killen admitted shooting into the home. Accordingly, the appellants' allegations regarding the sufficiency of the evidence are without merit.

2. The appellants allege the trial court erred by denying their motions to sever the offenses because the offenses were joined for trial only because they were of the same or similar character. We dis-

agree with this contention because the evidence shows the crimes were part of a single plan or scheme. As the offenses were "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the discretion of the trial court." (Punctuation omitted.) *Bailey v. State*, 157 Ga. App. 222, 223 (3) (276 SE2d 843) (1981). Thus, "[t]he test for the court to consider is [w]hether, in light of the number of offenses charged and the complexity of the evidence, the fact-trier will be able to distinguish the evidence and apply the law intelligently to each offense." (Punctuation omitted.) *Dobbs v. State*, 204 Ga. App. 83, 84 (1) (418 SE2d 443) (1992).

> It is not an abuse of discretion in the interest of justice for the judge to refuse a motion for severance of the trial of multiple charges where the crimes alleged were part of a continuous transaction conducted over a relatively short time, and from the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of another.

(Citations and punctuation omitted.) Id. at 83 (1).

Offenses are not joined solely because they are of the same or similar character when the similarity of the crimes reaches the level of a pattern showing a common motive, plan, scheme, or bent of mind. *Sanders v. State*, 236 Ga. App. 578, 580 (1) (a) (512 SE2d 678) (1999); see *Scroggins v. State*, 237 Ga. App. 122, 123 (3) (514 SE2d 252) (1999). Further, a trial court may refuse to sever offenses for trial if, as in this case, they "are based on the same conduct, on a series of connected acts, or on a series of acts constituting parts of a single scheme or plan." (Punctuation omitted.) *Jones v. State*, 226 Ga. App. 428, 431 (2) (487 SE2d 62) (1997). Therefore, we find no merit to the appellants' argument.

3. All appellants allege that the trial court erred by denying their motion for a mistrial following the State's reference to gang activity in its opening statement. This issue arose because the State responded to the appellants' pretrial motion in limine seeking to exclude any reference to gang activity by stating that it would not refer to or introduce evidence about gang activity. During opening statements, however, the prosecutor said the appellants were the "same buddies, same little group, same little gang." The appellants moved for a mistrial, but the motion was denied.

We find no error because there is no factual support for the appellants' basic allegations. The prosecutor's comments were not a reference to gang activity either as this term might be commonly understood or as defined in our criminal code. See OCGA § 16-15-4

(a) (conducting or participating in a criminal street gang through a pattern of criminal gang activity is unlawful). A " '[p]attern of criminal gang activity' " is defined in OCGA § 16-15-3 (2) as "the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit at least two" of certain designated offenses, none of which were alleged in this case.

In proper context, the prosecutor's comments could be reasonably understood as referring only to the appellants, and not to some larger group. Moreover, the prosecutor made no mention of "activities." Under the evidence in this case, the prosecutor's comments were fairly based on the evidence.

4. All appellants also allege the trial court erred by allowing the State to rebut their alibi defense even though it did not serve them with the notice required by OCGA § 17-16-5 (b). This subsection provides that

> [t]he prosecuting attorney shall serve upon the defendant within five days of the defendant's written notice but no later than five days before trial, whichever is later, a written notice stating the names, addresses, dates of birth, and telephone numbers of the witnesses, if known to the state, upon whom the state intends to rely to rebut the defendant's evidence of alibi unless previously supplied.

Thus, when the defendants revealed their intention to rely on an alibi defense, the State was required to make timely notifications to them of the anticipated rebuttal. OCGA § 17-16-5 (b). If the State fails to comply with this Code section, "the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances." OCGA § 17-16-6.

Although the State argues that it was authorized to rebut the testimony of the alibi witness regardless of the requirements of OCGA § 17-16-5 (b), this contention was rejected by our Supreme Court in *White v. State*, 271 Ga. 130, 131 (2) (518 SE2d 113) (1999). The State may not rely on its general witness list as a substitute for compliance with OCGA § 17-16-5 (b). Id.

> The statute, however, is concerned not with witnesses generally, but with witnesses who will testify regarding the alibi defense. Requiring specific disclosure of the witnesses upon whom the state will rely to rebut the alibi furthers the act's purpose of preventing surprise and promoting fairness.

> Furthermore, a defendant who knows which witnesses will testify to rebut an alibi can more accurately assess the strength of his case prior to trial and may consider avoiding a trial through a plea bargain.

Id. Accordingly, we find that the State was obligated to respond to the appellants' notification of their intention to rely upon alibi as a defense in this case, and neither the general witness list nor the State's entitlement otherwise to rebut or impeach a witness's testimony with conflicting testimony or statements (see OCGA §§ 24-9-82; 24-9-83) is a substitute for compliance with OCGA § 17-16-5 (b).

Under the circumstances of this case, however, the appellants were not entitled to the relief that they sought. A trial court is authorized to prohibit the State from introducing the evidence or producing the witness not disclosed "upon a showing of prejudice and bad faith." OCGA § 17-16-6. Here, the appellants did not show that the State acted in bad faith or that they were prejudiced by the State's failure to separately disclose the names of the witnesses who would rebut the alibi defense. "The finding of prejudice that is required by § 17-16-6 in order for a trial court to prohibit a witness from testifying is not the prejudice that is inherent in the testimony of any opposing party's witness. Instead, the prejudice must arise from the failure to comply with the discovery statute." *Malaguti v. State*, 273 Ga. 398, 402 (2), n. 9 (543 SE2d 1) (2001).

Additionally, a defendant is obliged to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of the reciprocal discovery act. *State v. Dickerson*, 273 Ga. 408, 411 (2) (542 SE2d 487) (2001). Under the circumstances, we hold that the appellants waived their right to assert error on appeal by their failure to seek a continuance. *Jenkins v. State*, 235 Ga. App. 547, 549 (3) (a) (510 SE2d 87) (1998).

5. Hayes contends the trial court erred by denying his motion to suppress evidence seized after what he contends was an illegal stop of the vehicle he was driving, because no reasonable suspicion existed for the stop. We disagree.

When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that a substantial basis existed for the decision. Evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

In this instance, the car was stopped because it had been seen parked "right down the road" from the house someone had just fired into. A witness saw the car parked on the roadside, facing the wrong way; then later, while standing in the yard at the crime scene, the witness saw the car drive by with three black people inside. Based on the witness's identification of the suspicious car, the sheriff and his deputies stopped it.

Once they stopped the car, a deputy standing outside the car saw in plain view a gun case under the front seat and a ski mask on the floor near the front passenger's seat. After they discovered these items, the deputies searched the car.

> Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. A *Terry* stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. (Citations and punctuation omitted.) *Fritzius v. State*, 225 Ga. App. 642, 643-644 (484 SE2d 743) [(1997)].

(Punctuation omitted.) *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997). We are satisfied that the witness's observation of the car parked at the time of the shooting for an extended period not far from the crime scene and her subsequent identification of the car as it passed the scene provided reasonable suspicion for stopping the car. As some evidence exists supporting the trial court's finding of fact, we cannot disturb it. *Woodruff v. State*, 233 Ga. 840, 844 (3) (213 SE2d 689) (1975).

6. Hayes also contends the trial court erred by denying his motion to sever his trial from the other appellants' trials. In a non-capital case, whether to sever defendants' trials lies within the trial court's discretion, which will not be disturbed unless it is abused. OCGA § 17-8-4; *Slaughter v. State*, 240 Ga. App. 758, 759 (1) (525 SE2d 130) (1999). To warrant a severance, Hayes was required to do more than raise the possibility that a separate trial would have given him a better chance of obtaining an acquittal. He was required to make a clear showing of prejudice sufficient to establish a denial of due process. *Barnett v. State*, 204 Ga. App. 491, 495 (2) (b) (420 SE2d

43) (1992); *Emmett v. State*, 199 Ga. App. 650, 652 (4) (405 SE2d 707) (1991).

A trial court must consider the following factors in exercising its discretion on a motion to sever: (1) whether the number of defendants will create confusion as to the law and evidence applicable to each, (2) whether there is a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions, and (3) whether the defendants' defenses are antagonistic to each other or to each other's rights. *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). None of these factors is present in this case, and Hayes has failed to carry his burden to make a clear showing of prejudice and denial of due process.

7. Hayes contends the trial court erred by denying his request to take judicial notice of a witness's perjured testimony, denying his motion to strike that testimony, and denying his motion for a mistrial based on that testimony. He contends the witness was a racist and her testimony was perjured and highly prejudicial. This argument misperceives the responsibilities of the court and the jury. "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80. Therefore, this was not a matter of which the trial court could take judicial notice. See OCGA § 24-1-4. Hayes was free to attempt to impeach the witness by any means authorized (OCGA §§ 24-9-82; 24-9-83), but the credit to be given to the witness's testimony was for the jury to decide. OCGA § 24-9-85. Accordingly, we find no error in the trial court's denial of these motions.

*Judgments affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 5, 2001

*Wright, Hyman & Pack, George R. Wright, Adrian L. Patrick*, for appellants (case nos. A01A0668 and A01A0670).

*John W. Sherrer, Jr.*, for appellant (case no. A01A0669).

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.

