## A02A0718. MACK v. THE STATE.
(564 SE2d 799)

RUFFIN, Judge.

A jury found Harvey George Mack guilty of two counts of second degree criminal damage to property.[1] Mack appeals, challenging the

---

[1] The State also charged Mack with aggravated stalking, but the trial court directed a verdict for Mack on this count.

sufficiency of the evidence. For reasons that follow, we affirm Mack's conviction on one count, but reverse on the other count.

In reviewing Mack's assertion that insufficient evidence supported the jury's verdict, we view that evidence

> in the light most favorable to the verdict, and [Mack] no longer enjoys the presumption of innocence; moreover, [we do] not weigh the evidence or determine witness credibility but only determine[ ] whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[3]

Viewed in favor of the jury's verdict, the evidence showed that the victim of the property damage was Mack's estranged wife, Vonice Mack. After approximately two and one-half years of marriage, the couple started fighting, and Vonice, with her children, moved out of their Newnan home and in with her mother in Decatur. Vonice testified that, while she and the children were living with her mother, Mack told her that he had previously cut another woman's car tires and threatened to "do [Vonice's] cars the same way." Because of the threat, Vonice parked the car she drove "right by the window [where she could] look and watch the car at night."

Vonice lived with her mother for two months and then moved into an apartment back in Newnan. Although Vonice did not tell Mack that she had moved, he telephoned her at the apartment about ten days later. According to Vonice, when she asked Mack how he got her telephone number, he responded that "[h]e can always know where [she is] and find where [she is]."

In the early morning hours two days after Mack's telephone call, Vonice was awakened by the sound of shattering glass. Vonice ran to the window where she saw "glass spattered all over [her] two cars," an Oldsmobile and a 1998 Ford Explorer. Vonice called the police and then went outside to survey the damage. She testified that "[t]he tires were slashed on both of the vehicles, and the windows were broken out on the back of [her 1998] Explorer . . . and the driver's side. On the Oldsmobile, the tires were slashed[,] [t]he front . . . [windshield] was [broken,] and the passenger side [window was broken]."

As Vonice was looking at the damage, a neighbor shouted from her apartment that she had seen the man who did it. The neighbor

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citation and punctuation omitted.) *Leigh v. State*, 223 Ga. App. 726, 728 (2) (478 SE2d 905) (1996).

testified at trial that she was awakened by a loud noise, and when she looked out her window, she saw a man walk away from Vonice's 1998 Ford Explorer to a black Ford Explorer that was parked under a streetlight. According to the neighbor, the man got into the passenger side of the black Ford Explorer, scooted over to the driver's side, started the car, and drove away. When the police arrived, the neighbor described the man's race and stated that he was short and skinny.

Vonice's Explorer and Oldsmobile were the only two cars vandalized in the parking lot that night, and Vonice testified that the Explorer had an alarm that did not sound. Although the alarm could be disarmed with a key, the only people who had keys were Vonice and Mack. Vonice also testified that Mack drove a black 2000 Ford Explorer with a broken driver's side door that would not open.

Mack was eventually arrested and charged in separate counts with damaging the two cars. At trial, he presented alibi testimony from a woman he was dating at the time, Veronica Gibbs. Gibbs testified that, on the night of the incident, she and Mack were on a date and that he picked her up around 8:00 or 9:00 p.m. in a red Mustang. According to Gibbs, they went to a bar and had drinks until about 10:00 or 10:30 p.m., and after driving around Jonesboro for four or five hours, she and Mack checked into a motel room located "in some part of Jonesboro," where they remained until they went to breakfast at approximately 7:00 in the morning. Although Gibbs lived in Jonesboro and had only two drinks that evening, she could not recall the name of the motel or where it was located in Jonesboro.

"A person commits the offense of criminal damage to property in the second degree when he . . . [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00."[4] In this case, Mack argues that the evidence was insufficient because the State failed to (1) identify him as the individual who damaged the vehicles, (2) prove that the 1998 Ford Explorer was the property of another, and (3) prove that the damage to the Oldsmobile exceeded $500.

1. We find no merit in Mack's arguments that insufficient direct evidence linked him to the crimes and that the jury was required to believe his alibi witness.

> Proof by direct evidence . . . is not required. A conviction may be based upon circumstantial evidence if the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of

---

[4] OCGA § 16-7-23 (a) (1).

the accused. When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury.[5]

Here, there was sufficient circumstantial evidence that Mack damaged the vehicles. Mack recently threatened to damage Vonice's vehicles, and he went so far as to track Vonice down, despite her attempts to hide. In addition, Mack had the only other key to disarm the Ford Explorer's alarm, and the perpetrator was observed driving away in a car that was not only the same year, model, and color as Mack's, but seemed to have the same peculiar damage to the driver's side door as Mack's car. Furthermore, the jury was not required to believe Mack's alibi witness to the exclusion of the State's proof that he damaged the vehicles.[6] Instead, "[t]his determination [was] simply a resolution of conflicting evidence, a traditional role of the jury. . . . [T]he jury heard [Mack's] defense of alibi and rejected it in favor of the State's evidence."[7] Under the circumstances, "we conclude that the jury rationally could have found from the circumstantial evidence that every reasonable hypothesis was excluded except that [Mack was] guilty of [damaging the vehicles]."[8]

2. We also disagree with Mack's argument that the State failed to present sufficient evidence that the 1998 Ford Explorer belonged to Vonice. In determining whether the car was the property of another, legal title is not conclusive.[9] Instead, the State must only show that a person other than the defendant had a legal right to possess or occupy the property.[10] Here, evidence showed that although both Vonice and Mack held title to the 1998 Ford Explorer, the car was registered in Vonice's name, and after moving from the marital home, she drove that car while Mack drove the 2000 Ford Explorer and a red Mustang. In describing the 1998 Ford Explorer and the Oldsmobile, Vonice referred to the vehicles as "my two cars." "A jury could reasonably conclude from this evidence that the [1998 Ford

---

[5] (Citations and punctuation omitted.) *Hayes v. State*, 249 Ga. App. 857, 860 (1) (549 SE2d 813) (2001).

[6] See *Bacon v. State*, 249 Ga. App. 347, 349 (1) (b) (548 SE2d 78) (2001).

[7] Id.

[8] *Hayes*, supra; see also *Bacon*, supra.

[9] See *Rash v. State*, 182 Ga. App. 655 (356 SE2d 719) (1987).

[10] See id. (in affirming conviction for second degree criminal damage to property Court ruled that " '[l]awful occupancy by one in charge constitutes ownership as contemplated by the statute, and the question of legal title is not involved' "); see also *Ginn v. State*, 251 Ga. App. 159, 161 (2) (553 SE2d 839) (2001) (evidence showed defendant damaged property of another where husband damaged a computer keyboard that "was a gift to the family from [the wife's] mother"); *Frost v. State*, 200 Ga. App. 267, 270 (3) (b) (407 SE2d 765) (1991) (same decided under arson statute, wife set fire to marital home lawfully occupied by husband).

Explorer] was not [Mack's] property alone, and that his damaging of the property would make him guilty of [criminal damage to property]."[11]

3. We agree with Mack, however, that the State failed to prove that the damage to the Oldsmobile exceeded $500. To establish the amount of the damages, the State presented testimony from two police officers who described the damage, photographs of the damage, and the following testimony from Vonice:

Q. And [the damage to] the Oldsmobile?
A. I think the tires [cost] [$]300, and my son went to the junk yard and got parts for that one because I didn't have insurance on that.
Q. Okay. And so what would have been approximately the total damage on that car?
A. Probably about five or — about $500.

This evidence does not show that the damage *"exceeds $500.00,"*[12] as required by OCGA § 16-7-23 (a) (1). Without belaboring the point, we find that the jury was uninformed as to whether "about $500" meant a sum less than $500 or a sum that exceeded $500. Accordingly, " 'there was no competent evidence from which the jury could determine that the value of the damage for which defendant was responsible was in excess of $500, an essential element of the indicted crime,' " and Mack's conviction for damaging the Oldsmobile must, therefore, be reversed.[13]

*Judgment affirmed in part and reversed in part. Pope, P. J., and Barnes, J., concur.*

DECIDED APRIL 30, 2002.

*Sanders, Haugen, Sears & Meeker, Walter S. Haugen*, for appellant.

*Peter J. Skandalakis, District Attorney, Emily C. Gross, Raymond C. Mayer, Charles P. Boring, Assistant District Attorneys*, for appellee.

---

[11] *Ginn*, supra.
[12] (Emphasis supplied.)
[13] *Waldrop v. State*, 231 Ga. App. 164, 166 (498 SE2d 337) (1998).